**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PAUL H. ELINE,** | : | |
| | : | |
| **Petitioner** | : | |
| | : | **CIVIL NO. 3:CV-11-0767** |
| **v.** | : | |
| | : | **(Judge Caputo)** |
| **JOHN E. WETZEL,** *et al.*, | : | |
| | : | |
| **Respondents** | : | |

**M E M O R A N D U M**

**I.     Introduction**

In 2006, the *pro se* petitioner, Paul H. Eline, was convicted of multiple counts of theft by deception 18 PA. CON. STAT. ANN. § 3922(a)(1) and deceptive business practices under 18 PA. CON. STAT. ANN. § 4107(a)(2) in the Court of Common Pleas of Schuylkill County.  These convictions resulted from charges alleging that Mr. Eline fraudulently contracted to install residential swimming pools and accepted payment thereof, but failed to install the pools.  Mr. Eline received an aggregate sentence of ten (10) to twenty (20) years' imprisonment and ordered to pay $154,193.50 in restitution.

Mr. Eline has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 raising the following challenges: (1) his trial and appellate counsel were ineffective on several grounds, including their failure to adequately prepare; (2) his criminal information was defective as it was signed by an unauthorized official;

(3) insufficient evidence to convict him of Deceptive Business Practices; (4) trial counsel was ineffective for failing to seek a change of venue; (5) trial counsel was ineffective for failing to request that the jury be polled after the pronouncement of the verdict; (6) trial counsel failed to object to a violation of Mr. Eline's right to a speedy trial; and (7) that Mr. Eline was denied access to the courts when the Schuylkill County Clerk of Court denied him access to certain records pertaining to his criminal case.  (Doc. 1; Doc. 1-7.)  Respondents' response contends that Mr. Eline has only exhausted his state court remedies as to one sub-issue of his first claim relating to ineffective assistance of counsel.  (Doc. 19-1.)  As a result, Respondents argue that: (1) Mr. Eline's unexhausted claims should be dismissed based on his failure to exhaust and (2) Mr. Eline's exhausted ineffective assistance of counsel claim should be denied on the merits.

For the reasons that follow, the Petition will be denied.

## II.     Background

Originally, Mr. Eline was charged with twenty-seven counts alleging both theft by deception and deceptive business practices.  Mr. Eline's business dealt with the installation of swimming pools.  The charges stem from allegations that Mr. Eline accepted money in exchange for unfulfilled promises to install functioning pools.

On January 24, 2006, following a three day jury trial, Mr. Eline was found guilty of sixteen (16) counts of Deceptive Business Practices where the amount exceeds $2,000.00, and two (2) counts of deceptive business practices where the amount is greater than $200.00 but less than $2000.00.  *See Commonwealth v.*

*Eline*, 940 A.2d 421 (Pa. Super. Dec. 31, 2007).  During the three-day trial, many of

Mr. Eline's unsuspecting customers testified about their dealings with Mr. Eline.  By

way of example, the Pennsylvania Superior Court recounted, in part, the relevant

facts as follows:

> Timothy Schofield testified he responded to a newspaper advertisement, contacted [Mr. Eline] in order to have an in-ground swimming pool installed, and signed an installation agreement on July 10, 2004. Mr. Schofield gave [Mr. Eline] a deposit of $8,800.00, and [Mr. Eline] informed Mr. Schofield he would being the job within two weeks and have the pool completed during the first week of August, 2004.  [Mr. Eline] informed Mr. Schofield that he "wasn't that busy" and could have the pool installed quickly.  By August, 2004, nothing had been done, and Mr. Schofield attempted to contact [Mr. Eline], who did not take Mr. Schofield's telephone calls.  In mid-August of 2004, [Mr. Eline] answered the telephone, and Mr. Schofield demanded the return of his deposit. [Mr. Eline] indicated he would come to Mr. Schofield's house to discuss the situation, and during the next week, pool supplies began appearing in Mr. Schofield's yard.  [Mr. Eline] and Mr. Schofield discussed the situation, decided to proceed with the pool, and [Mr. Eline] dug a six inch deep hole.  Several weeks passed without any further work being completed; however, at some point, heavy equipment was placed in Mr. Schofield's yard.  In mid-September of 2004, Mr. Schofield telephoned [Mr. Eline] and told him that, until all of the pool supplies were delivered, [Mr. Eline] should proceed no further. [Mr. Eline] retrieved his equipment, delivered no pool supplies, did no further work, and refused to refund Mr. Schofield's deposit.

> * * *

> Jeffrey Tellez testified he contacted [Mr. Eline] on August 28, 2004, in order to have a swimming pool installed, and he signed an installation agreement.  Mr. Tellez gave [Mr. Eline] a total of $10,000.00 as a deposit, and [Mr. Eline] stated the pool would be completed in two weeks.  Mr. Tellez telephoned [Mr. Eline] repeatedly, and [Mr. Eline] came to his property in October of 2004.  At this time, [Mr.

Eline] removed a few tree stumps and partially removed part of Mr. Tellez'[s] concrete patio; on November 6, 2004, [Mr. Eline] began digging a hole for the swimming pool. After digging a hole for about half of the pool, no other work was completed. [Mr. Eline] never provided any reason for the delay, and despite requests from Mr. Tellez, he did not refund Mr. Tellez's deposit.

\* \* \*

Clark Romberger testified that he saw an advertisement in the newspaper, contacted [Mr. Eline] on July 27, 2004, in order to have a swimming pool installed, and signed an installation agreement.  Mr. Romberger paid [Mr. Eline] $9,300.00 as a deposit, and he was told the work would be completed by the end of August of 2004.  In mid-August of 2004, the hole was dug and pool wall panels were installed; only part of the pool's concrete floor was installed. [Mr. Eline] gave Mr. Romberger a bill for $3,045.00, which Mr. Romberger refused to pay.  Mr. Romberger indicated that the work, which [Mr. Eline] had already done, was shoddy in that the pool's walls were not properly anchored and wash out occurred, resulting in no concrete around the walls. Mr. Romberger requested completion of the job, and [Mr. Eline] said to just leave him alone and let him do his job.  In late-September of 2004, Mr. Romberger asked that the contract be voided and [Mr. Eline] should return Mr. Romberger's money.  [Mr. Eline] refused.  In early-October of 2004, Mr. Romberger demanded the pool be completed by October 15, 2004, and [Mr. Eline] indicated it would be "no problem;" however, [Mr. Eline] did no additional work on Mr. Romberger's property.

\* \* \*

Kathy Herb testified that she saw an advertisement in the newspaper, and she contacted [Mr. Eline] on June 10, 2004, to have an above-ground pool installed. [Mr. Eline] agreed to order a specific deck and pool from the pool manufacturer so that Ms. Herb's elderly father could enter the pool.  Ms. Herb paid [Mr. Eline] $2,637.82, and [Mr. Eline] indicated the pool supplies would arrive in approximately three weeks.  After approximately three weeks had passed without any work being done, Ms. Herb began calling [Mr. Eline].  Eventually, the pool was

installed; however, [Mr. Eline] supplied neither the ladder nor the deck for the pool.  As a result, neither Ms. Herb's children nor elderly father could get into the pool.  After making a demand, [Mr. Eline] gave her the ladder from the showroom; however, he never installed the deck.  Ms. Herb's repeated telephone calls to [Mr. Eline] went unanswered. [Mr. Eline] never told Ms. Herb that he was unable to install the deck; he just did not do so. [Appellant] never gave Ms. Herb an installation agreement; however, he gave her a sales slip.  Ms. Herb and her husband went to [Mr. Eline]'s place of business to see if they could find their special-order deck; however, it was not on [Mr. Eline]'s premise.

\* \* \*

Michael Gallo testified that from April of 2004 until October 18, 2004, he was an excavator for [Mr. Eline].  He testified that, in installing a pool, an excavator digs a hole, the exterior walls are placed, footers are installed, and then the excavator backfills dirt behind the walls to raise the ground level to the top of the pool.  From April to October of 2004, Mr. Gallo dug holes for approximately fifteen to twenty pools; however, he did not complete any one job.  He testified that "I'd get so far on one job, and I'd be sent to another job site; start that job, sent to another job site, and constantly shifted around from site to site."  Mr. Gallo indicated [Mr. Eline] was the person who sent him to the job sites.  Mr. Gallo testified he was asked to leave job sites at the end of the day, take heavy equipment to different job sites and leave the equipment overnight, where he would then pick up the heavy equipment the next day and take it to a different job site.  Mr. Gallo testified that during relevant time period he only backfilled properly one pool. Mr. Gallo testified that [Mr. Eline] did not have a warehouse and he stored pool parts at a lot next to his office.

\* \* \*

[Mr. Eline] presented the testimony of Stephen Mazur, Jr., who was offered as an expert in excavating.  He testified that weather conditions are a "major factor" in excavating, heavy equipment cannot be maneuvered in wet conditions, and backfilling is difficult when the soil is saturated with water.  Mr. Mazur indicated that he was unable to complete

many of his excavation projects in Schuylkill and Berks
Counties during the summer of 2004 due to wet conditions.
He indicated that he booked jobs in the spring of 2004
which could not be completed until the spring of 2005 due
to the wet conditions.  Mr. Mazur admitted that he had
never performed any pool installation, he did not know of
the specific conditions at any of the victims' homes, and he
did not personally observe the condition of any of [Mr.
Eline]'s work.  Mr. Mazur indicated that he accepted five or
six excavation projects for 2004, which was an average
amount.  He admitted that a crew of five or six full-time men
could not complete twenty jobs in that period of time.

*Eline*, 940 A.2d at 425-431 (internal citations omitted).

On March 30, 2006, the trial court sentenced Mr. Eline to a term of

imprisonment of ten (10) to twenty (20) years.  On August 3, 2006, Mr. Eline filed a

direct appeal to the Pennsylvania Superior Court, which affirmed the criminal

judgment by opinion filed on December 31, 2007.  (Doc. 1-6, ECF p. 9)  It is noted

that, during the course of the direct appeal, Mr. Eline's trial counsel, Robert A. Kurtz,

Esquire, died.  (Doc. 1-7, ECF p. 3.)  Andrew B. Zelonis, Esquire, was appointed

following Mr. Kurtz's death, and began representing Mr. Eline after the notice of

appeal had already been filed.  (Doc. 36, ECF p. 61.)

On February 14, 2008, Mr. Eline filed a timely petition for collateral relief

under Pennsylvania's Post Conviction Relief Act (PCRA), 42 PA. CONS. STAT. ANN.

§§ 9541 *et seq.*  (Doc. 1-1, ECF pp. 65-72.)  The trial court, now acting as PCRA

court, held a hearing on the PCRA petition where Mr. Eline was represented by

Public Defender Harry A. Rubright, Esquire.  (Doc. 36, PCRA Hr'g Tr.)  On

December 5, 2008, the PCRA court denied the Petition.  (Doc. 1-2, ECF pp. 10-18,

*Commonwealth v. Eline*, No. 208-2005 (Schuylkill Cnty. Ct. Com. Pl. Dec. 5, 2008)).

Mr. Eline appealed to the Superior Court on December 31, 2009, and on November 5, 2009, the Superior Court affirmed the judgment of the PCRA court.  (*See* Doc. 1-2, ECF pp. 5-9, *Commonwealth v. Eline*, No. 34 MDA 2009 (Pa. Super. Ct. Nov. 5, 2009).)  On November 24, 2009, Mr. Eline filed a petition for allowance of appeal (*Id.*, ECF pp. 1-4) which was denied by the Pennsylvania Supreme Court on October 4, 2010.  (Doc. 19-1, ECF p. 2.)

On April 21, 2011, Mr. Eline timely filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1.)  In the petition, Mr. Eline has raised seven claims for relief.  (Doc. 1; Doc. 1-7.)  In accordance with *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999) and *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000), the Court issued formal notice to Mr. Eline that he could either have the petition ruled on as filed, that is, as a § 2254 petition for writ of habeas corpus and heard as such, but lose his ability to file a second or successive petition, absent certification by the court of appeals, or withdraw his petition and file one all-inclusive § 2254 petition within the one-year statutory period prescribed by the Antiterrorism Effective Death Penalty Act (AEDPA).  (Doc. 7.)  On June 21, 2005, Mr. Eline returned the notice of election form, indicating that he wished to proceed with his petition for writ of habeas corpus as filed.  (Doc. 8.)  Thus, a Show Cause Order was issued on June 23, 2011.  (Doc. 9.)  On August 11, 2011, the District Attorney of Schuylkill County filed a response to the petition.  (Doc. 19.)  Mr. Eline filed a timely traverse.  (Docs. 31 and 32.)  On March 29, 2012, the Court directed Respondents to supplement their response by filing a copy of Mr. Eline's PCRA hearing transcript. (Doc. 33.)  A copy of the requested transcript was filed on April 17, 2012.  (Doc. 36.)

### III.     Governing Legal Principles

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, ___, 131 S.Ct. 770, 780, 178 L.Ed.2d 624 (2011).  A habeas corpus petition pursuant to § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement.  *Preiser v. Rodriguez*, 411 U.S. 475, 498-99, 93 S.Ct. 1827, 1841, 36 L.Ed.2d 439  (1973).  As Mr. Eline's conviction became final after 1996, this case is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214, April 24, 1996 (AEDPA).

Habeas relief is only available on the grounds that a petitioner's judgment of sentence or confinement violates federal law.  28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, ____, 131 S.Ct. 13, 16, 178 L.Ed.2d 276 (2010)(per curiam).  State law claims are not remediable on federal habeas review, even if state law was erroneously interpreted or applied.  *See Swarthout v. Cooke*, 562 U.S. 216, ____, 131 S.Ct. 859, 861 - 62, 178 L.Ed.2d 732 (2011) (citations omitted); *see also Glenn v. Wynder,* 743 F.3d 402, 407 (3d Cir. 2014)(quoting *Estelle v. McGuire*, 502 U.S. 62, 67 - 68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991)("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."))

A person in custody pursuant to a judgment of a state court must generally meet three requirements to obtain habeas relief:  (1) exhaustion; (2) lack of a

procedural bar; and (3) satisfaction of the deferential standard of review set forth in the AEDPA.

### A.     Exhaustion

Under 28 U.S.C. § 2254(b)(1)(A), a federal district court may not grant a habeas petition filed on behalf of "a person in custody pursuant to the judgment of a [s]tate court" unless "the applicant has exhausted the remedies available in the courts of the [s]tate."  28 U.S.C. § 2254(b)(1)(A); *Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 2554-55, 115 L.Ed.2d 640 (1991).  The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999).  A habeas petitioner retains the burden of showing that all of the claims alleged have been "fairly presented" to the state courts.  To "fairly present" a claim, a petitioner must present its "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).  "[A] state habeas petitioner must present the 'substantial equivalent' of his federal claim to the state courts in order to give the state courts 'an opportunity to

apply controlling legal principles to the facts bearing upon his constitutional claim.'"
*Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 543 (3d Cir. 2014)(quoting
*Picard v. Connor*, 404 U.S. 270, 277 - 78, 92 S.Ct. 509, 513, 30 L.Ed.2d 438
(1971)).  A federal claim not fairly presented to the reviewing state court may be
either unexhausted or procedurally defaulted.

A federal habeas petitioner "shall not be deemed to have exhausted the
remedies available in the courts of the State ... if he has the right under the law of
the State to raise, by any available procedure, the question presented."  28 U.S.C. §
2254(c).[1]  The petitioner has the burden of establishing that the exhaustion
requirement has been met.  *Ross v. Petsock*, 868 F.2d 639, 643 (3d Cir. 1989);
*O'Halloran v. Ryan*, 835 F.2d 506, 508 (3d Cir. 1987).

### B.    Procedural Default

Under the procedural default doctrine, a federal habeas court is precluded
from reaching the merits of a claim when: (1) the claim was presented to the state
courts and was denied on the basis of an adequate and independent state
procedural ground; or (2) the claim was not presented to the state courts and it is
clear those courts would find the claim procedurally barred under state law.

---

[1]  Pursuant to Pennsylvania Supreme Court Order 218, effective May 9, 2000,
issues presented to the Pennsylvania Superior Court are considered exhausted for the
purpose of federal habeas corpus relief under § 2254.  *See In re: Exhaustion of State
Remedies in Criminal and Post-Conviction Relief Cases*, No. 218, Judicial Administration
Docket No. 1 (May 5, 2000)(*per curiam*).

*Coleman*, 501 U.S. at 735 n. 1, 111 S.Ct. at 2557; *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000).

A federal court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either: (1) "cause" for the procedural default and "actual prejudice" as a result of the alleged violation of federal law; or (2) failure to consider the claims will result in a "fundamental miscarriage of justice." *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000); *Wenger v. Frank*, 266 F.3d 218, 223-224 (3d Cir. 2001). To establish "cause," a petitioner must establish that "some objective factor external to the defense" that impeded his ability to raise the claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). Once "cause" has been successfully demonstrated, a petitioner must then also prove "actual prejudice." To establish "actual prejudice," "the habeas petitioner must show 'not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* at 494, 106 S.Ct. at 2648 (citing *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982)(emphasis in original)). Where petitioner fails to establish cause, the court need not reach the prejudice prong of the claim before denying it. *See Smith v. Murray*, 477 U.S. 527, 533, 106 S.Ct. 2661, 2666, 91 L.Ed.2d 434 (1986).

Procedural default may also be excused if a petitioner can demonstrate that a fundamental miscarriage of justice will occur, *i.e.* that he is "actually innocent" of the

crimes against him.  *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998).  The fundamental miscarriage of justice exception is confined to cases of actual innocence as compared to legal innocence, where the petitioner can show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence.  *See McQuiggin v. Perkins*, ___ U.S. ___, ___, 133 S.Ct. 1924, 1931-32, 185 L.Ed.2d 1019 (2013).  "[A] petitioner asserting actual innocence . . . must rely on 'reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence'" not presented at trial.  *Munchinski v. Wilson*, 694 F.3d 308, 337-38 (3d Cir. 2012)(citing *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995)).  New evidence which tends to undermine the credibility of a witness "will seldom, if ever, make a clear and convincing showing that no reasonable juror would have believed the heart of [the witness'] account of petitioner's actions.  *Sawyer v. Whitley*, 505 U.S. 333, 349, 112 S.Ct. 2514, 2524, 120 L.Ed.2d 269 (1992).

There exists a final, very narrowly carved, exception to the procedural default rule.  While under *Coleman*, 501 U.S. at 752-53, 111 S.Ct. at 2566, the United States Supreme Court held that an attorney's negligence in a post-conviction proceeding does not create "cause" for excusing procedural default, it has recently recognized a limited exception to this rule in *Martinez v. Ryan*, ___ U.S. ___, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012) and *Trevino v. Thaler*, ___ U.S. ___, 133 S.Ct. 1911, 185 L.Ed.2d 1044 (2013).  The Supreme Court's rulings in *Martinez* and

*Trevino* hold that, under some circumstances, ineffective assistance of counsel can provide cause to excuse procedural default.[2]  *Martinez* only applies to claims of ineffective assistance of trial counsel where the errors or absence of post-conviction counsel caused a default of the claims at the initial-review post-conviction proceeding.  *Martinez*, ____ U.S. at ____, 132 S.Ct. at 1318.  To emphasis the limited exception the Supreme Court created in *Martinez*, in its opinion the Court specifically held that its decision "does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts."  *Id.* at ____, 132 S.Ct. at 1320.

To prevail on a *Martinez/Trevino* exception to excuse a habeas petitioner's procedural default, the habeas petition must demonstrate that the claim of ineffective assistance of trial counsel in the habeas petition was a "substantial" claim.  *Trevino*, ____ U.S. at ____, 133 S.Ct. at 1918.  A "substantial" claim of ineffective assistance of counsel is one that "has some merit."  *Martinez*, ____ U.S. at ____, 132 S.Ct. at 1318.

---

[2]  In *Martinez,* the Supreme Court ruled that where a state's procedural law requires claims of ineffectiveness assistance of counsel to be raised in an initial-review collateral proceeding a procedural default will not bar a habeas court from hearing a substantial claim of ineffective assistance of trial counsel if, in the initial proceeding, there was no counsel or counsel was ineffective.  *Martinez*, ___U.S. at ___, 132 S.Ct. at 1320; *see also Cox v. Horn*, 757 F.3d 113, 119 (3d Cir. 2014).  The Supreme Court subsequently expanded the *Martinez* exception in *Trevino*, holding that where a "state['s] procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of counsel on direct appeal, [the] holding in *Martinez* applies."  *Trevino*, ___ U.S. at ___, 133 S.Ct. at 1921.

"*Strickland v. Washington* supplies the standard for addressing a claim of ineffective assistance of counsel." *United States v. Myers*, 365 F. App'x 769, 770 (3d Cir. 2010).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).


C.     The AEDPA's Deferential Standard of Review

The AEDPA specifies that the standard of review applicable to a particular claim depends on how that claim was resolved by the state courts.  *Breakiron v. Horn*, 642 F.3d 126, 131-32 (3d Cir. 2011).   "AEDPA deference is due only if the state court has adjudicated the issue on the merits."  *Hairston v. Hendricks*, 578 F. App'x 122, 126 (3d Cir. 2014); 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000).[3]

Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on

---

[3]  "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with *res judicata* effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground*." Rompilla v. Horn*, 355 F.3d 233, 247 (3d Cir. 2004), *rev'd on other grounds*, *Rompilla v. Horn*, 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005).

an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).  In short, section 2254(d)(1) governs federal court review of the state court's legal conclusions while section 2254(d)(2) governs review of factual findings.  Additionally, a state court's factual findings are "presumed to be correct," and the habeas corpus petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Wertz v. Vaughn*, 228 F.3d 178, 196 (3d Cir. 2000).

The "contrary to" and "unreasonable application" clauses of Section 2254(d)(1) have independent meaning.  *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002).  The Supreme Court has clarified that relief lies under section 2254(d)(1) only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts"; or (2) "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Williams,* 529 U.S. at 413, 120 S.Ct. at 1523; *see also White v. Woodall*, ___ U.S. ___, ___, 134 S.Ct. 1697, 1702, 188 L.Ed.2d 698 (2014).  A federal court may also grant habeas relief under the "unreasonable application" clause of § 2254(d)(1) if the state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case."  *Williams*, 529 U.S. at 407, 120 S.Ct. at 1520.  Alternatively, an "unreasonable application" of federal law

occurs if the state court chose the correct rule of law based on the facts, but applied the rule in an "objectively unreasonable way." *Id.*; *see also Rompilla v. Beard*, 545 U.S. 374, 380, 125 S.Ct. 2456, 2462, 162 L.Ed.2d 360 (2005).

The AEDPA standard under § 2254(d) is a "difficult" test to meet and is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, ____ U.S. ____, ____, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011).  The petitioner carries the burden of proof and with respect to review under § 2254(d)(1) and that review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id*.  "[R]eview under 28 U.S.C. § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Id*. at ____,  131 S.Ct. at 1398; *see also Rapelje v. McClellan*, ____ U.S. ____, ____, 134 S.Ct. 399, 400, 187 L.Ed.2d 442 (2013).  For purposes of § 2254(d)(1), "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 528 U.S. at 411, 120 S.Ct. at 1522.  Rather,

> an "unreasonable application of" [Supreme Court] holdings must be "'objectively unreasonable,'" not merely wrong; even "clear error" will not suffice. *Lockyer v. Andrade*, 538 U.S. 63, 75–76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v.*

> *Richter*, 562 U.S. ____, ____, 131 S.Ct. 770, 786–787, 178
> L.Ed.2d 624 (2011).

*Woodall*, ____ U.S. at ____, 134 S.Ct. at 1702.  "If this standard is difficult to meet, that is because it was meant to be."  *Richter*, 562 U.S. at ____, 131 S.Ct. at 786.

Turning to § 2254(d)(2), the test for the "unreasonable determination of facts" clause is whether the petitioner has demonstrated by "clear and convincing evidence," § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record.  *Rountree v. Balicki*, 640 F.3d 530, 537 (3d Cir. 2011) (citing *Rice v. Collins*, 546 U.S. 333, 338–339, 126 S.Ct. 969, 974, 163 L.Ed.2d 824 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.' ") (quoting § 2254(e)(1)) (citing *Miller–El v. Dretke*, 545 U.S. 231, 240, 125 S.Ct. 2317, 2325, 162 L.Ed.2d 196 (2005)); *see also Simmons v. Beard*, 590 F.3d 223, 231 (3d Cir. 2009) ("Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence.").  Further, as with § 2254(d)(1), the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication.  *Rountree*, 640 F.3d at 538 (citing *Cullen*, ____ U.S. at  ____, 131 S.Ct. at 1401-03).

The Third Circuit has developed a two-step inquiry for reviewing a § 2254 petition.  As noted above, the court must first identify the applicable Supreme Court precedent.  *Outten v. Kearney*, 464 F.3d 401, 413 (3d Cir. 2006).  The petitioner

must show that the Supreme Court precedent requires the opposite result, not merely that his interpretation is more plausible than that of the state court.  *Id*. Second, the federal habeas court must objectively evaluate whether the state court decision was an unreasonable application of Supreme Court precedent.  *Id*., 464 F.3d at 414 (citing *Werts v. Vaughn*, 228 F.3d 178 (3d Cir. 2000)).  The district court cannot grant relief simply because "we disagree with the state court's decision or because we would have reached a different result."  *Id*.  The court may only grant relief if "the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent."  *Id*.  (quoting *Hackett v. Price*, 381 F.3d 281, 287 (3d Cir. 2004)).

Finally, "[i]n considering a § 2254 petition, the court reviews the 'last reasoned decision' of the state courts on the petitioner's claims."  *Simmons v. Beard*, 590 F.3d 233, 232 (3d Cir. 2009)(quoting *Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008).)

IV.    **Discussion**

A.    **Procedurally Defaulted Claims**

In the instant case, the record reveals that Mr. Eline's Claim One, in part, (related to ineffective assistance of trial counsel for failing to adequately prepare for trial), and Three (related to sufficiency of the evidence), were raised in the state courts and reviewed on the merits by the Pennsylvania Superior Court.  Therefore, Mr. Eline has properly exhausted these claims.  It appears, however, that the

remainder of his claims have not been exhausted as they were not presented to the state's highest appropriate court, either on direct appeal or in a state post-conviction proceeding.  The time to present these claims has passed for purposes of direct appellate review.  Further, because it appears that any subsequent PCRA petition filed by Mr. Eline would be untimely, *see* 42 PA. CONS. STAT. ANN. § 9545(b) (petition must be filed within one year of the date judgment becomes final), these issues are procedurally defaulted.  Therefore, the court will now discuss whether Mr. Eline has demonstrated an excuse to procedural default of these issues.  *See McCandless*, 172 F.3d at 260.

In a liberal reading of the petition, Mr. Eline appears to be claiming ineffective assistance of PCRA counsel as "cause" to overcome the procedural default of his remaining claims.[4]

In order to understand the context of Mr. Eline's argument, the court notes the following procedural history in the state courts.  At the conclusion of Mr. Eline's direct appeal, Mr. Eline filed, a *pro se* PCRA petition on February 14, 2008.  (Doc. 1-6, ECF p. 11.)  The PCRA court then appointed Public Defender Harry A. Rubright, Esquire, as PCRA counsel for Mr. Eline.  The court subsequently held an evidentiary

---

[4] The court notes that Mr. Eline's procedurally defaulted claim against the Schuylkill County Clerk of Courts relating to denial of access to the courts is not properly before this court in these habeas corpus proceedings.  Rather, an access to the courts claims is properly brought in an action pursuant to the provisions of 42 U.S.C. § 1983.  In fact, Mr. Eline indicates that he has filed a civil complaint against the Clerk of Courts in the Northumberland County Court of Common Pleas.  (*See* Doc. 1-6, ECF p. 80.)  He also states that the Northumberland County court dismissed the complaint without prejudice to Plaintiff's right to re-file a complaint in the proper venue.  (*Id.*)  Further, Plaintiff informs the court that he is in the process of preparing such a complaint, to be filed in federal court.  As such, the access to courts claim will be dismissed without prejudice.

hearing on Mr. Eline's *pro se* PCRA petition on April 29, 2008.  (*Id.*)   At the outset of

that evidentiary hearing, when the PCRA court asked Attorney Rubright to set forth

a basic outline as to what he intended to prove at that hearing, he made the

following statement:

> [F]ollowing review of Mr. Eline's *pro se* PCRA petitions
> and my opportunity to review the material and have
> discussions with him, it's my understanding that Mr.
> Eline's allegations are going to relate to the preparation
> and conduct of trial counsel, making an allegation that
> trial counsel was ineffective in his representation of Mr.
> Eline at the time the case was prosecuted, specifically
> that Mr. Kurtz was unprepared; Mr. Kurtz failed to review
> and develop from material of the Defendant meaningful
> defense strategy; that he failed to produce various
> records into the trial that would have been relevant to the
> testimony of witnesses that were presented by the
> Commonwealth.
>
> * * *
>
> Mr. Eline also maintains that the Commonwealth lacked
> jurisdiction to prosecute him here in Schuylkill County . . .

(Doc. 36, PCRA Hr'g Tr., ECF pp. 3-4.)  As a result, during the course of the

proceedings, the PCRA court heard testimony on these two issues.  (*See* Doc. 36.)

In addition, Mr. Eline testified that he asked his trial counsel, Mr. Kurtz, to raise the

issue relating to an impartial jury on direct appeal, but Mr. Kurtz failed to include that

issue in his brief to the Superior Court.  (*Id.*, ECF p. 39.)  Attorney Zelonis, who

replaced Mr. Kurtz upon his death, testified that Mr. Eline did not ask him to amend

or supplement his direct appeal to include allegations of jury tainting.  (*Id.*, ECF pp.

62-63.)

On December 5, 2008, the PCRA court denied the PCRA petition.  (*See* Doc.

1-2, ECF pp. 10-18.)  Specifically, the court addressed all of Mr. Eline's contentions

of ineffective assistance of trial counsel and appellate counsel, including issues

related to change of venue and possible tainting of the jury.[5]  (*Id.*)  Thereafter,

Attorney Rubright ceased representation of Mr. Eline, and on December 31, 2008,

Public Defender Christopher M. Riedlinger, Esquire, entered his appearance on

behalf of Mr. Eline.  (Doc. 1-2, ECF p. 96, Crim. Dkt.)  Mr. Eline, however, acting *pro

se*, completed a Criminal Docketing Statement setting forth his issues for appeal to

the Superior Court.  (Doc. 1-2, ECF pp. 52-61; Doc. 1-6, ECF p. 12.)  Those issues

included: (1) Mr. Eline was unlawfully convicted because his criminal information

was not signed by the proper authority; (2) trial counsel was ineffective for failing to

poll the jury after the verdict; (3) trial counsel was ineffective for failing to challenge

venue; (4) trial counsel was ineffective for failing to raise the issue of speedy trial.

(Doc. 1-2, ECF pp. 52-61.)  It appears that Mr. Eline's appellate counsel, Mr.

Riedlinger, signed and filed this Docketing Statement on January 21, 2009.  (*Id.*,

ECF p. 55.)  However, in his brief to the Superior Court, Mr. Riedlinger only briefed

the issue of whether trial counsel was ineffective for failing to adequately prepare for

---

[5] As set forth by the PCRA court, those ineffectiveness issues were as follows: (1) trial counsel failed to subpoena critical defense witnesses; (2) trial counsel failed to introduce critical evidence at trial; (3) trial counsel failed to prepare Mr. Eline for trial; (4) trial counsel failed to allow Mr. Eline to testify on his own behalf at trial; (5) trial counsel failed to challenge venue; (6) trial counsel was suffering from an addiction to alcohol and drugs; (7) trial counsel did not provide Mr. Eline with copies of discovery from the District Attorney; and (8) appellate counsel, Attorney Zelonis, failed to allege that trial counsel was ineffective for failing to provide the court with evidence of Mr. Eline's innocence and for failing to investigate the possible tainting of the jury.  (Doc. 1-2, ECF pp. 10-18.)

trial.  (*See* Doc. 1-2, ECF p. 6, *Commonwealth v. Eline*, No. 34 MDA 2009 (Pa.

Super. Ct. Nov. 5, 2009.)   As a result, the Superior Court decided only that issue on

the merits.[6]  (*See id.*)

 Upon review of this procedural history, the court concludes the following with

respect to Mr. Eline's procedurally defaulted claims.  First, as to his issues of

unlawful conviction and his right to a speedy trial, *Martinez, supra*, does not provide

Mr. Eline relief with respect to excusing the procedural default at issue here because

these claims are not ones of ineffective assistance of trial counsel.  Instead, Mr.

Eline is claiming that the Commonwealth violated his rights with respect to the filing

of his criminal information and a speedy trial.  These are not issues that fall within

the ambit of *Martinez* which this court reads narrowly as only permitting a habeas

petitioner to argue that a procedurally defaulted claim of ineffective assistance of

trial counsel may be heard where the "cause" for the procedural default was due to

the ineffective assistance of post-conviction counsel.  *See Glenn v. Wynder*, 743

F.3d 402 (W.D. Pa. Sept. 19, 2012) (procedurally defaulted claims of trial court error

are not excused by *Martinez*).  Therefore, the court finds no basis for excusing the

procedural default of these two claims, and habeas relief will be denied.

---

 [6] In its memorandum opinion, the Superior Court stated, "Despite the multiple claims of ineffective assistance of trial and appellate counsel raised in his PCRA petition, on appeal Eline focuses on only a narrow allegation of trial counsel ineffectiveness.  He presents the following issue for our review: 'Whether trial counsel committed ineffective assistance of counsel by failing to adequately prepare for trial.'" (Doc. 1-2, ECF p. 6.)  The court addressed the following claims as to trial counsel's failure to adequately prepare for trial: (1) counsel's failure to meet with Mr. Eline or review discovery materials or the list of witnesses with Mr. Eline.  (*Id.*, ECF p. 7.)

Second, any failings of Mr. Eline's *appellate* PCRA counsel, Mr. Riedlinger, would not qualify for the *Martinez* exception, which explicitly limited an excusable cause of procedural default to ineffective assistance of counsel at the *initial* stage of collateral proceedings.  *See Martinez*, ___ U .S. at ___, 123 S. Ct. at 1316; *Trevino*, ___ U.S. at ___, 133 S. Ct. at 1918.  Again, the purpose of the *Martinez* exception is to address instances where an ineffective assistance of trial counsel claim may only be raised in the first instance at an initial-review collateral proceeding, such that ineffective assistance of counsel at that stage would prevent any other court from reviewing those claims.  The Supreme Court clarified:

> [t]he same is not true when counsel errs in other kinds of postconviction proceedings.  While counsel's errors in these proceedings preclude any further review of the prisoner's claim, the claim will have been addressed by one court, whether it be the trial court, the appellate court on direct review, or the trial court in an initial-review collateral proceeding.

*Martinez*, ___ U.S. at ___, 132 S. Ct. at 1316.  In this case, Mr. Eline argues that his appellate PCRA counsel was ineffective for failing to brief the issues he raised in the Superior Court's Docketing Statement, and therefore this failure should excuse the procedural default of those issues.  (*See* Doc. 1-6, ECF p. 12.)  As the *Martinez* exception does not apply in such a situation, *see Martinez*, ___ U.S. at ___, 132 S. Ct. at 1316, the court concludes that Mr. Eline has failed to establish "cause" for his procedural default as to those claims.

Next, the court notes that the Superior Court found that Mr. Eline waived the sub-issue of his Claim One of ineffective assistance of trial counsel for failing to

review with him discovery material obtained from the Commonwealth.  (See Doc. 1-2, ECF p. 9.)  Specifically, in addressing the issue the Superior Court found:

> At the hearing, Eline testified that trial counsel was ineffective for not ***providing*** him with copies of the discovery received from the Commonwealth, but he did not raise trial counsel's failure to review this material with him. *See* N.T., 4/29/08, at 54-55.  Eline did not raise an issue concerning trial counsel's failure to review documents he provided, nor did he raise an issue of a failure to review the list of witnesses with him.  *Id.* at 19-21.

(Doc. 1-2, ECF p. 9.) (emphasis in original).  Because Mr. Eline failed to raise these issues at the PCRA hearing, the Superior Court found them waived for purposes of appeal and did not review them.  (*Id.*) (citing *Commonwealth v. Jones*, 815 A.2d 598, 607 (Pa. 2002)).  This court cannot re-examine the state court's application of its own rules of appellate procedure.[7]  *See Estelle*, 502 U.S. at 67-68, 112 S.Ct. at 480.  The Superior Court's finding that the issue is waived under a state rule of appellate procedure constitutes a procedural bar to federal habeas review.  *See Harris v. Reed*, 489 U.S. 255, 262-63, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989).  And, here again, because the court has already determined that Mr. Eline cannot excuse his procedural default by demonstrating "cause," this sub-issue of Claim One is procedurally barred from habeas review.

Moreover, even if Mr. Eline's claim of ineffective assistance of appellate PCRA counsel could excuse the procedural default of the claims of ineffective

---

[7] The Superior Court relied upon *Jones*, a state court case, which held that the defendant's failure to raise a claim in the court below meant that the claim was waived when the defendant later attempted to raise the omitted claim on appeal.  *Jones*, 815 A.2d at 607 (citing Pa. R. App. P. 302(a)).

assistance of trial counsel for failing to challenge venue and for failing to investigate the possible tainting of the jury, these claims are without merit.  With respect to venue, as the PCRA court found, "because the number of instances of criminal activity occurring in both Schuylkill and Berks counties, venue was proper in the Court of Common Pleas of Schuylkill County."[8]  (*See* Doc. 1-2, ECF p. 16.)  As such, trial counsel could not have been ineffective under the *Strickland* standard, for failing to seek a change of venue, where such a request would have been denied.

As to the claim related to the possible tainting of the jury, Mr. Eline did not raise this issue in his direct appeal but rather raised it for the first time before the PCRA court claiming that direct appeal counsel was ineffective for failing to raise trial counsel ineffectiveness for omitting the claim.  After hearing testimony from direct appeal counsel, the PCRA court denied Mr. Eline's claim on the basis that direct appeal counsel, who entered his appearance after the notice of appeal had been filed but further briefed the Superior Court on the issues raised, was not asked

---

[8] Under Pennsylvania Rule of Criminal Procedure 130,

(A) Venue.  All criminal proceedings in summary and court cases shall be brought before the issuing authority for the magisterial district in which the offense is alleged to have occurred or before an issuing authority on temporary assignment to serve such magisterial district, subject, however, to the following exceptions:

* * *

(3) When charges arising from the same criminal episode occur in more than one judicial district, the criminal proceeding on all the charges may be brought before one issuing authority in a magisterial district within any of the judicial districts in which the charges arising from the same criminal episode occurred.

Pa. R. Crim. P. 130(A)(3).

by Mr. Eline to amend the direct appeal to include allegations of jury tainting.  (*See*

Doc. 1-2, ECF p. 18.)  Before this court, Mr. Eline has provided no support for why

appellate collateral counsel was constitutionally ineffective for failing to raise this

claim, as opposed to permissibly deciding not to further pursue a non-meritorious

claim.  In addition, Mr. Eline has provided no evidence, aside from hearsay

testimony that he heard that two jurors knew some of the victims, that the underlying

action of trial counsel to not poll the jury after the announcement of the verdict was

ineffective assistance.

Finally, with respect to Mr. Eline's unexhausted sub-issues in Claim One,

relating to overall trial and appeal counsel ineffectiveness, even if his procedural

default as to these sub-issues could be excused, these sub-issues have no merit.

As the PCRA court found:

> The Defendant's first contention of ineffectiveness is that
> trial counsel, Attorney Kurtz failed to subpoena critical
> defense witnesses.  Defendant testified that he wanted
> Attorney Kurtz to subpoena code enforcement officers and
> others to testify at his trial, (TR, pp. 20-21).  Defendant
> maintains that these witnesses would have testified that he
> was given a stop order to stop work on some of the projects
> and that he would be arrested if he didn't stop work, (TR,
> pp. 22-23).  However, at the time of hearing on the Petition,
> Defendant produced no evidence that Attorney Kurtz failed
> to contact these witnesses or that he contacted them and
> chose not to subpoena them as part of his trial strategy.
> The Defendant testified that Attorney Kutz said they didn't
> need the witnesses, (TR, P. 22).  However, the Defendant
> did not subpoena any witnesses to the hearing on the
> PCRA Petition to support this allegation.
>
> The Defendant's second contention of ineffectiveness is
> that trial counsel, Attorney Kurtz, failed to introduce critical
> evidence at his trial.  The Defendant's fifth contention of
> ineffectiveness is that his trial counsel, Attorney Kurtz,

failed to furnish the court with exculpatory evidence. The Defendant testified that there were three large boxes of records containing stop work order or other contractual information specifically relating to the allegations in the criminal proceeding. These documents were previously in the possession of the Law firm Riley and Fanelli because of their representation of Defendant in his corporate matters, (TR, p. 14). The Defendant stated that all of the documents were turned over to his trial counsel, Attorney Kurtz, in preparation for his criminal trial, (TR, p. 15). The Defendant further stated that he and Attorney Kurtz went in the back of the court room in the midst of trial to discuss the three boxes of records as Attorney Kurtz only brought one of the three with him to trial, (TR, p. 19). Apparently, the Defendant told Attorney Kurtz that there were items in the boxes relevant to the prosecution of his case to which Attorney Kurtz replied, "We'll take care of that later. We don't need them now." (TR, p. 19). The substance of the criminal charges against Defendant was that he was involved in some deceptive business practice wherein he was paid for work that he did not perform. If the Defendant received a stop work order, he would have not been permitted to proceed with the installation of a swimming pool. (TR, pp. 17-18). However, the Defendant provided no evidence that Attorney Kurtz failed to produce critical or exculpatory evidence at the time of trial. Additionally, the Defendant did not introduce any of the documents contained in the three boxes of documents at the hearing on the PCRA Petition to prove that these stop orders existed. Furthermore, testimony was given by appeal counsel, Attorney Andrew Zelonis, regarding these issues. Attorney Zelonis received the three boxes of information for Attorney Kurtz's office after his death. He stated that he organized all three boxes which contained thousands of pages of documents pertaining to different cases, checking account information, contracts for most of the alleged victims and weather report information, (TR, p. 68). Attorney Zelonis stated that he found nothing that was left out of the trial once he went through the transcript, (TR, p. 69). Furthermore, he never came across any "stoppage orders or anything like that," (TR, pp. 69-70).

The Defendant's third contention of ineffectiveness is that his trial counsel, Attorney Kurtz, failed to prepare the

Defendant for trial.   However, the Defendant offered no evidence at the time of hearing to support this allegation.

The Defendant's fourth contention is that his trial counsel, Attorney Kurtz, failed to allow the Defendant to testify on his own behalf at trial.   However, on cross examination of the Defendant at the PCRA hearing, it was brought out that at the time of trial Attorney Kurtz stated, "I want to put on the record, Your Honor, that I have discussed this with Mr. Eline, who is sitting right next to me, and we have decided that he will not be testifying in this case.   That was his decision.   Is that correct, Paul?   That was your decision" And Mr. Eline responded, "Correct," (PCRA TR, pp. 44-45).

* * *

The Defendant's seventh contention of ineffectiveness is that his trial counsel, Attorney Kurtz, was suffering from an addiction to alcohol and drugs.   The Defendant stated that he observed that Attorney Kurtz had blood shot eyes smelled of alcohol, and had a white powder substance in the corner of his nose after leaving the bathroom, (TR, p. 21, 22).   The Defendant's allegations that Attorney Kurtz was intoxicated or under the influence of drugs at the time of trial are mere allegations.   At no time did the Defendant inform the Court of any issue of Attorney Kurtz being impaired in any way during trial.   In fact, the Defendant testified that he did not bring it to the attention of the trial Judge but instead stated he addressed it with Attorney Kurtz at the end of the day, (TR, p. 22).   Furthermore, the District Attorney and no other person involved in Defendant's trial approached the Court to report any impairment of Attorney Kurtz.  Therefore, we cannot accept this allegation of ineffectiveness on Defendant's impression alone.   In the absence of showing, Defendant cannot establish his claim of ineffectiveness.

The eight contention of ineffectiveness is that his trial counsel Attorney Kurtz did not provide the Defendant with copies of discovery from the District Attorney.   The Defendant testified at the hearing that he would have no reason to doubt that Attorney Kurtz had received 809 pages of discovery from the District Attorney's office, (TR, p. 56).   However, Defendant agreed that Attorney Kurtz

-28-

was acting on his behalf as his attorney.  Therefore, the
Defendant failed to establish ineffectiveness.

(Doc. 1-2, ECF pp. 13-17.)  Here, the PCRA court found no deficient performance on

the part of either trial counsel or appellate counsel.  Under *Strickland*, the PCRA court's

reasoning is not contrary to, or an unreasonable application of, federal law.  Therefore,

Mr. Eline's sub-issues, had their procedural default been excused, would not have

survived constitutional challenge.

In sum, for the reasons set forth above, the court finds that Mr. Eline has not

demonstrated "cause" to excuse the procedural default of Mr. Eline's unexhausted

claims.  Further, Mr. Eline has not demonstrated that a fundamental miscarriage of

justice excuses his default because he is actually innocent.  Accordingly, habeas relief

on these claims will be denied.


### B.    Ineffective Assistance of Counsel

Mr. Eline's sole exhausted claim of ineffective assistance of trial counsel

focuses on whether trial counsel was ineffective for failing to adequately prepare for

trial.  As Respondents do not dispute that this claim has been exhausted, (*see* Doc.

19-1, ECF p. 2), the court will address this claim on the merits.

As previously noted, the scope of this court's review on the merits of the

issues presented in a Section 2254 habeas petition is set forth in 28 U.S.C. §

2254(d).

Turning to a claim of ineffective assistance of counsel, to establish such a

claim, Mr. Eline first "must show counsel's performance was deficient," meaning

"counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Second, he must show "the deficient performance prejudiced the defense," meaning counsel's "errors were so serious as to deprive the defendant of a fair trial." *Id*. "For AEDPA purposes, the *Strickland* test qualifies as 'clearly established Federal law, as determined by the Supreme Court.'" *Rainey v. Varner*, 603 F.3d 189, 197 (3d Cir. 2010) (quoting *Williams*, 529 U.S. at 391, 120 S.Ct. at 1512).[9]

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. at 689, 104 S.Ct. at 2065. "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690, 104 S.Ct. at 2066. Further, the standard of reasonableness is an objective, not subjective. *Breakiron v. Horn*, 642 F.3d 126, 145 (3d Cir. 2011).

---

[9] Pennsylvania applies the same test for ineffective assistance of counsel as the federal courts. *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000). In Pennsylvania, the ineffective assistance of counsel standard requires the Mr. Eline to "rebut the presumption of professional competence" by demonstrating: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interest; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different." *Commonwealth v. Sneed*, 587 Pa. 318, 899 A.2d 1067, 1076 (Pa. 2006). If Mr. Eline fails to satisfy any of the standard's prongs, the claim will be rejected. *Id*. In this case, because the state court applied the correct legal standard, the state court decision cannot meet the "contrary to" prong of 28 U.S.C. § 2254(d)(1).

In order to satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687, 104 S.Ct. at 2064.  Therefore, if counsel's errors had no effect on the judgment, the convictions should not be reversed. *See Id*. at 691, 104 S.Ct. at 2066.  Additionally, unless a defendant satisfies both prongs of the *Strickland* test, "it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.  In other words, if a defendant cannot show prejudice, performance need not be considered by a reviewing court.

In this case, Mr. Eline contends that his trial counsel rendered ineffective assistance when he failed to adequately prepare for trial.  In its November 5, 2009 memorandum addressing Mr. Eline's appeal from the denial of his PCRA petition, the Pennsylvania Superior Court addressed the merits of this claim.  The court concluded that Mr. Eline's claim that trial counsel failed to meet with him and discuss the case had no merit due to the lack of credible supporting evidence. Further, as noted earlier, the Superior Court found that Mr. Eline's claims that trial counsel was ineffective for failing to review discovery documents received from both the Commonwealth and from Mr. Eline were waived because Mr. Eline did not raise these issue during the PCRA hearing.  (Doc. 1-2, ECF pp. 6-9.)  As the court has already addressed the procedural default of this latter claim, the court will address the portion of Mr. Eline's claim that trial counsel failed to adequately prepare for trial that was properly presented to the court for review.

-31-

The Superior Court found the following:

> With regard to Eline's contention that trial counsel failed to meet with him and discuss the case, the PCRA court denied this claim upon finding that Eline failed to present credible evidence to support it. PCRA Court Opinion, 12/5/08, at 6. Our review of the record supports this determination. At the hearing, Eline testified that trial counsel did not discuss the facts of the case with him. N.T., 4/29/08, at 13-14. However, beyond this statement, Eline presented absolutely no evidence in support of this claim. Eline testified that he wrote many letters to trial counsel "begging" trial counsel to meet with him. *Id*. at 14. However, he did not offer any such letters into evidence. Eline also testified that his friend, Kathy Smith, contacted trial counsel on his behalf multiple time[s] to relay Eline's requests to meet with trial counsel. *Id*. at 14, 46. Eline did not present Ms. Smith to testify at the PCRA hearing to confirm that she made such requests. Moreover, Eline admitted that he met with trial counsel on at least three occasions prior to trial. *Id*. at 13.

> In reaching its decision, the PCRA court clearly rejected Eline's testimony that trial counsel did not meet with him as incredible. It is not the role of this Court to make credibility determinations or act as a trier of fact. *Commonwealth v. Lutes*, 793 A.2d 949, 960 (Pa. Super. 2002). Rather, "[i]t is the province of the trier of fact to pass upon the credibility of witnesses . . . and the factfinder is free to believe all, part, or none of the evidence." *Commonwealth v. McCoy*, 928 A.2d 306, 309 (Pa. Super. 2007). Having made its credibility determination and rejecting Eline's testimony, there was no other evidence before the PCRA court to support Eline's claim. It was Eline's burden to prove the underlying merit to this claim (that is, that trial counsel failed to meet with him and therefore was inadequately prepared for trial), and the PCRA court concluded that Eline failed to meet this burden. As the record supports this determination, we may not disturb it.

(Doc. 1-2, ECF pp. 7-8.)

In light of the record presented, the State court's decision was not based on an unreasonable determination of the facts. A rational jurist could reach the same

findings on the basis of the evidence in the record; namely, Mr. Eline concedes that

his trial counsel met with him on at least three times prior to trial, and that his

conclusory statements of denied requests for further consultation were unsupported.

As a result, the court finds that Mr. Eline does not meet his burden to show deficient

performance by trial counsel.  As Mr. Eline is unable to satisfy the deficient

performance prong of *Strickland*, the court need not address whether he suffered

prejudice.


**C.     Sufficiency of Evidence**

Mr. Eline's challenge to the sufficiency of the evidence to support his

deceptive business practices convictions is governed by *Jackson v. Virginia*, 443

U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  Under *Jackson*:

> [T]he critical inquiry on review of the sufficiency of the
> evidence to support a criminal conviction . . . does not
> require a court to "ask itself whether *it* believes that the
> evidence at the trial established guilt beyond a reasonable
> doubt." . . . Instead, the relevant question is whether, after
> viewing the evidence in the light most favorable to the
> prosecution, *any* rational trier of fact could have found the
> essential elements of the crime beyond a reasonable
> doubt. . . .   This familiar standard gives full play to the
> responsibility of the trier of fact fairly to resolve conflicts in
> the testimony, to weigh the evidence, and to draw
> reasonable inferences from basic facts to ultimate facts.
> Once a defendant has been found guilty of the crime
> charged, the factfinder's role as weigher of the evidence is
> preserved through a legal conclusion that upon judicial
> review *all of the evidence* is to be considered in the light
> most favorable to the prosecution.

*Jackson*, 443 U.S. at 318-19, 99 S.Ct. at 2788-89 (citations omitted) (emphasis in original).  In addition, where historical facts support conflicting inferences, the habeas court engaging in sufficiency of evidence review must presume that the trier of fact resolved any such conflicts in favor of the prosecution.  *Id*. at 326, 99 S.Ct. at 2793.  Further, when applying the sufficiency of the evidence test, the habeas court must consider the types of evidence the state courts consider relevant to proving the elements of the offense at issue.[10]  *Id*. at 324, 99 S.Ct. at 2792.  This review is essential inasmuch as the elements of the criminal offense are defined by state law. *See Id*. at 324 n.16, 99 S.Ct. at 2792 n. 16.

In Pennsylvania, Deceptive Business Practices is defined, in relevant part, as:

> (a) Offense defined. - - A person commits an offense if, in the course of business, the person;
>
> (2) sells, offers or exposes for sale, or delivers less than the represented quantity of any commodity or service.

18 Pa. Cons. Stat. Ann. § 4107(a)(1).  Here, in his petition, Mr. Eline claims that the Commonwealth failed to present evidence to sustain a conviction under 18 Pa. Cons. Stat. Ann. § 4107(a)(1) because he and the victims "had a construction contract that does not fall under the mandates of deceptive business practices." (Doc. 1, ECF p. 8.)  The Pennsylvania Superior Court addressed Mr. Eline's claim, including his numerous arguments in support thereof, as follows:

---

[10] The Third Circuit has noted that, when applying the sufficiency of the evidence test, the habeas court should "look to the evidence the state considers adequate to meet the elements of a crime governed by state law."  *Jackson v. Byrd*, 105 F.3d 145, 149 (3d Cir. 1997).

Citing to *Commonwealth v. Snyder*, 483 A.2d 933 (Pa. Super. 1984), [Mr. Eline] first argues he could not be convicted under Subsection 4107(a)(2) since there was no evidence he made any written or verbal representations indicating the victims received something (commodities or services) that was not actually delivered. We conclude [Mr. Eline] as misinterpreted *Snyder* and Subsection 4107(a)(2).

In *Snyder*, the defendant was charged with, *inter alia*, deceptive business practices under Subsections 4107(a)(2) **and** (a)(6). The version of Subsection 4107(a)(6) in effect at that time[] provided that a person was guilty of deceptive business practices if he "makes a false or misleading written statement for the purpose of obtaining property or credit . . . ." 18 Pa.C.S.A. § 4107(a)(6). In analyzing whether a *prima facie* case had been established against the defendant under Subsections 4107(a)(2) and (a)(6), this Court stated, "We also find sufficient *prima facie* evidence to show that [defendant] engaged in deceptive business practices by delivering less than the bargained-for quantity of goods or services to the [victims], and by representing in writing that the greater quantity had been provided. *See id.* § 4107(a)(2), (6)." Snyder, 483 A.2d at 939. That portion of our *Snyder* opinion relating to the defendant making a representation in writing that he had delivered a greater quantity of goods/services than he had actually delivered established guilt under Subsection 4107(a)(6). No such requirement is necessary for a conviction under Subsection 4107(a)(2). Therefore, there was no need for the Commonwealth to establish under Subsection 4107(a)(2) that [Mr. Eline] attempted to "convince" or otherwise represented to the victims that he had actually delivered the goods or services. Therefore, we find this portion of [Mr. Eline]'s sufficiency claim to be meritless as a matter of law.

Regarding [Mr. Eline]'s claim that the Commonwealth failed to show that, given time, he would have satisfactorily completed all of the swimming pools, and therefore, the Commonwealth did not establish any element of intent , we find the issue to be meritless.

In *Commonwealth v. Maleno*, 407 A.2d 51 (Pa. Super 1979), this Court concluded that fraud, which includes a

-35-

wrongful intent to deceive, is an element of the crime of deceptive business practices.  In the instant case, we conclude that, as to the specific victims listed by [Mr. Eline], the Commonwealth sufficiently proved that [Mr. Eline] took a deposit, and sometimes a second payment, with the intent of not completing the agreed upon work.  This intent is confirmed by the fact [Mr. Eline] neither began nor completed the installation of any pool within the time frame verbally agreed upon, and, after [Mr. Eline] was given money, he was non-responsive to repeated telephone calls and inquiries made by the victims.  Although none of the victims were given what was promised to them by [Mr. Eline], [Mr. Eline] refunded no portion of their money when demands were made.  Moreover, we note that [Mr. Eline]'s employee's testimony confirms [Mr. Eline]'s wrongful intent in that the employee indicated he was sent to various jobs throughout the summer and completed only one job successfully.  Moreover, [Mr. Eline] would have him leave equipment at a job site, only to have it retrieved in the morning.  Therefore, we find the evidence to be sufficient.

[Mr. Eline]'s second contention is that the evidence was insufficient to demonstrate deceptive business practices as to victim Kathy Herb since she received a functioning swimming pool and ladder.  We disagree.

Ms. Herb experienced the same problems as the other victims, namely, [Mr. Eline] verbally agreed to a specific time frame for the installation of the pool after he received Ms. Herb's money, [Mr. Eline] did not meet the specific time frame, and [Mr. Eline] was generally unresponsive to Ms. Herb's numerous inquiries.  In addition, Ms. Herb testified that the money she gave to [Mr. Eline] included money for the installation of a specific deck, which was to be used for ingress and egress from the pool by her elderly father. [Mr. Eline] neither provided the deck nor a refund to Ms. Herb. We find unavailing [Mr. Eline]'s suggestion the evidence was insufficient since there is no evidence Ms. Herb was given an installation agreement.   Ms. Herb testified regarding her verbal contract with [Mr. Eline], as well as the fact [Mr. Eline] gave her a sales slip. This was sufficient.

(Doc. 1-4, ECF pp. 59 - 62, ¶¶ 32-37, *Commonwealth v. Eline*, No. 1312 MDA 2006

(Pa. Super. Ct. Dec. 31, 2007).)

The Superior Court did not cite *Jackson* for its sufficiency test, but instead relied upon Pennsylvania authority for the applicable standard.[11]  (Doc. 1-4, ECF p. 59, ¶ 30) (citing *Commonwealth v. Thomas*, 522 Pa. 256, 260, 561 A.2d 699, 702 (Pa.1989)).  Even so, the Third Circuit Court of Appeals has opined that the Pennsylvania standard for sufficiency is identical to the federal *Jackson* standard.  *See Evans v. Ct. of Comm. Pleas, Dela. Co., Pa.*, 959 F.2d 1227, 1233 (3d Cir. 1992).  Since the Superior Court applied law that is consistent with *Jackson*, its adjudication of Mr. Eline's claim was not contrary to Supreme Court precedent.  *See Williams*, 529 U.S. at 405-06 (a state court decision is contrary to Supreme Court precedent when it applies a rule that contradicts the governing law set forth in Supreme Court precedent).

Here, the Superior Court found that the evidence was sufficient because it supported the inference that Mr. Eline sold, offered or exposed for sale, or delivered

---

[11] The Superior Court applied the following standard:

> "In reviewing the sufficiency of the evidence, we view all the evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to see whether there is sufficient evidence to enable the jury to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Thomas*, 522 Pa. 256, 260, 561 A.2d 699, 702 (1989) (citation omitted). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Sanders*, 627 A.2d 183, 185 (Pa. Super. 1993) (citation omitted).  Although a conviction must be based on "more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty." *Commonwealth v. Badman*, 580 A.2d 1367, 1372 (Pa. Super. 1990) (citation omitted).

(Doc. 1-4, ECF p. 59, ¶ 30.)

less than the represented quantity of the commodity or service represented.  (Doc. 1-4, ECF pp. 60-62, ¶¶ 33-37.)  In light of the evidence the Superior Court summarized, it was reasonable to infer that Mr. Eline, in the course of his business, sold, offered or exposed for sale, and/or delivered less than the represented quantity of the offered commodity or service as to all of the victims who testified.  Therefore, the Superior Court's adjudication of Mr. Eline's claim was a reasonable application of Supreme Court precedent in light of the evidence presented.  Habeas relief on this claim will be denied.


## IV.    Conclusion

Based on the foregoing determination that Mr. Eline's claims are procedurally defaulted or without merit, the court will deny the petition for writ of habeas corpus. (Doc. 1.)

The court must now determine whether a certificate of appealability should issue.  A court may issue a certificate of appealability only if the Mr. Eline "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). This requires that the Mr. Eline "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Here, the court denies a certificate of appealability because jurists of reason would not find it debatable that denial of the petition based on findings of procedural default and lack of merit of Mr. Eline's claims is correct.  However, Mr. Eline is advised that he has the right for thirty (30)

days to appeal our order denying his 2254 petition, *see* 28 U.S.C. § 2253(a); Fed. R.

App. P. 4(a)(1)(A), and that our denial of a certificate of appealability does not

prevent him from doing so, as long as he also seeks a certificate of appealability

from the Third Circuit Court of Appeals.  *See* Fed. R. App. P. 22; Local Rule of App.

P. 22.1.

      An appropriate Order follows.


                              **/s/ A. Richard Caputo**
                              **A. RICHARD CAPUTO**
                              **United States District Judge**

**Date: December 16, 2014**